**TYLER J. JENSEN (#9913)**
**JACOB D. BRIGGS (#12041)**
**LEBARON & JENSEN, P.C.**
**476 West Heritage Park Blvd., Suite 200**
**Layton, Utah 84041**
**TELEPHONE: (801) 773-9488**
**FACSIMILE: (801) 773-9489**

**tylerjensen@lebaronjensen.com**

---

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF UTAH

---

| | |
|---|---|
| **In re:** | |
| **High Plains Real Estate Group, L.L.C.** | **Case Number 09-24765** |
| **Debtor.** | |
| | **Honorable JUDITH A. BOULDEN** |

---

### MOTION BY DEBTOR FOR SUMMARY JUDGMENT ON PLAINTIFF'S
### COMPLAINT TO DETERMINE THAT RENTS ARE PROPERTY OF THE
### BANK AND FOR INJUNCTIVE RELIEF

COMES NOW High Plains Real Estate Group, L.L.C., the Debtor and Debtor in

Possession (the "Debtor"), pursuant to Fed. R. Bankr. P. 7056, and moves the Court for

summary judgment on Plaintiff's complaint for relief.

Plaintiff claims that the rental proceeds flowing from the only asset of the

Debtor's estate are not property of the Debtor's estate because the rental proceeds were

1

"foreclosed" upon through Plaintiff's pre-petition notification to Debtor's tenants to make payment to First Community. This assertion is contrary to law, reason, and public policy.

The plain language of the Assignment of Rents to First Community does not even purport to affect an "absolute" assignment to First Community. The Assignment is written in terms of additional security for the indebtedness of High Plains. Even if the Assignment was "absolute" on its face, it still is in the nature of additional security because the Debtor retained an interest in the Rental Proceeds that continued after First Community notified the tenants to pay the Rental Proceeds to First Community—the Debtor had a right to again receive the Rental Proceeds once the indebtedness to First Community was extinguished.

The Debtor in this case is attempting to return its estate to its formerly strong and viable condition. Plaintiff, by retaining the Rental Proceeds, would prevent the Debtor from doing so and thereby frustrate the reorganization purpose of the Bankruptcy Code. Plaintiff would have this Court hold that it obtained all title and interest in the Rental Proceeds, without ever having assumed any risk of non-collection of the Rental Proceeds or assumed any duties related to the operation of the Debtor's estate. Under these conditions, it would be inequitable and inappropriate to conclude that Plaintiff is absolutely and exclusively entitled to the Rental Proceeds. The Debtor retained an interest in the Rental Proceeds as of the date it filed its bankruptcy petition.

## STATEMENT OF FACTS

1. Debtor filed a voluntary Chapter 11 petition (hereinafter "Petition") on May 09, 2009, case number 09-24765.

2. The Debtor's primary asset is certain commercial real property, located at 1255 East 3900 South, Salt Lake City, Utah, tax parcel no. 16-32-428-012 (hereinafter the "Building").

3. Debtor is in the business of leasing the commercial real property.

4. As of the date of the Petition, the Debtor was receiving rents from the following tenants in the following amounts:

   a.  CNS                                      $3698.13/mo
   b.  Rocky Mountain Hearing & Balance LLC     $1,888.13/mo
   c.  JB Properties                            $1,465.75/mo
   d.  Team Infusion                            $2,937.45/mo
   e.  Regency Hospital                         $42,670.00/mo
   f.  Utah Groups LLC                          $1,261.00/mo
   g.  **Total**                                **$52,454.71/mo**
   (hereinafter "Rental Proceeds")

5. The Debtor needs to have access to the Rental Proceeds in order to continue the ongoing operations of the estate.

6. The Debtor has not yet presented a plan for reorganization, but when presented the plan will focus on obtaining additional tenants in the commercial building, thereby increasing the Rental Proceeds to a level which will adequately provide for operating expenses and normal monthly payments to creditors.

7.   First Community Bank (hereinafter "First Community") is a secured creditor

with an interest in the Debtor's commercial real property pursuant to a certain

"Deed of Trust," attached as Exhibit B to First Community's "Complaint to

Determine that Rents are Property of the Bank and for Injunctive Relief"

(hereinafter "First Community's Complaint") on file with the Court.

8.   First Community has an interest in the Rental Proceeds arising out of the Deed of

Trust and a certain "Assignment of Rents," (hereinafter "Assignment") attached

as Exhibit D to First Community's Complaint, on file with the Court.

9.   The portions of the Assignment which define the nature of First Community's

interest in the Rental Proceeds are quoted below:

> ASSIGNMENT. For valuable consideration, Grantor
> hereby assigns, grants a continuing security interest in, and
> conveys to Lender all of Grantor's right, title, and interest
> in and to the Rents from the following described Property .
> . . .
>
> CROSS COLLATERALIZATION.  In addition to the
> Note, this Assignment secures all obligations, debts and
> liabilities, plus interest thereon, of Grantor to Lender . . . .
>
> FUTURE ADVANCES.  In addition to the Note, this
> Assignment secures all future advances made by Lender to
> Grantor . . . .
>
> THIS ASSIGNMENT IS GIVEN TO SECURE (1)
> PAYMENT OF THE INDEBTEDNESS AND (2)
> PERFORMANCE OF ANY AND ALL OBLIGATIONS
> OF GRANTOR UNDER THE NOTE, THIS
> ASSIGNMENT, AND THE RELATED DOCUMENTS.

PAYMENT AND PERFORMANCE. . . . Unless and until Lender exercises its right to collect the Rents as provided below and so long as there is no default under this Assignment, Grantor may remain in possession and control of and operate and manage the Property and collect the Rents, provided that the granting of the right to collect Rents shall not constitute Lender's consent to the use of cash collateral in a bankruptcy proceeding.

No Further Transfer.  Grantor will not sell, assign, encumber, or otherwise dispose of any of Grantor's rights in the Rents except as provided in this Assignment.

LENDER'S RIGHT TO RECEIVE AND COLLECT RENTS.  Lender shall have the right at any time, and even though no default shall have occurred under this Assignment, to collect and receive the Rents.  For this purpose, Lender is hereby given and granted the following rights, powers and authority:
    Notice to Tenants.  Lender may send notices to any and all tenants of the Property advising them of this Assignment and directing all Rents to be paid directly to Lender or Lender's agent.

APPLICATION OF RENTS.  All costs and expenses incurred by Lender in connection with the Property shall be for Grantor's account and Lender may pay such costs and expenses from the Rents.  Lender, in its sole discretion, shall determine the application of any and all Rents received by it; however, any such Rents received by Lender which are not applied to such costs and expenses shall be applied to the Indebtedness.

FULL PERFORMANCE.  If Grantor pays all of the Indebtedness when due and otherwise performs all the obligations imposed upon Grantor under the Assignment, the Note and the Related Documents, Lender shall execute and deliver to Grantor a suitable satisfaction of this Assignment . . . .

RIGHTS AND REMEDIES ON DEFAULT.

> Collect Rents.  Lender shall have the right, without notice to Grantor, to take possession of the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness.

10. On April 10, 2009 and/or April 17, 2009, First Community purportedly sent letters to the Debtor's tenants notifying said tenants that they should pay rent directly to First Community immediately.  (See Exhibit E to First Community's Complaint, on file with the Court).  For purposes of this summary judgment motion only, the Debtor does not dispute whether the tenants received the notices sent by First Community.

11. Bank of Idaho, Trustee for the Rodney T. Clark RIRA and Kay J. Clark RIRA (hereinafter "Clark") also has an interest in the Rental Proceeds, having a second-position Assignment of Rents on the Property arising out of a certain "Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing."  (See Exhibit B, attached to the "Notice that Bank of Idaho, Trustee for the Rodney T. Clark RIRA and the Kay J. Clark RIRA does not Consent to Use of Rents or 'Cash Collateral'," (hereinafter "Clark's Notice"),  on file with the Court at 09-24765).

12. Clark also believes that its "Assignment of Rents" operates as an absolute assignment such that the Debtor has no interest in the Rental Proceeds and

therefore, such proceeds are not available to the Debtor for use as cash collateral. (See Clark's Notice, on file with the Court at 09-24765).

13. On or after December 26, 2008, Clark purportedly sent letters to the Debtor's tenants notifying said tenants that they should pay rent directly to Clark immediately.  (See Exhibit C, attached to Clark's Notice, on file with the Court at 09-24765).  For purposes of this summary judgment motion only, the Debtor does not dispute whether the tenants received the notices sent by Clark.

## ARGUMENT

As of the date of the Petition, the Debtor retained an interest in the Rental Proceeds sufficient to bring the Rental Proceeds within the scope of the Cash Collateral provisions of 11 U.S.C. § 363(a).  Accordingly, neither First Community nor Clark "foreclosed" upon their interest in the Rental Proceeds in a way that deprived the Debtor of any interest in the Rental Proceeds.  The Rental Proceeds are property of the Debtor's estate.

## I.     DETERMINATION OF CASH COLLATERAL STATUS.

Rents derived from leases on property of the estate are generally considered property of the estate.  11 U.S.C. § 541(a)(6).  Property of the estate is generally available for use by the debtor-in-possession in the ordinary course of business.  11 U.S.C. § 363(b)(1).  If, however, the rents are considered cash collateral under section 363(a), the debtor-in-possession is limited in its use of that cash collateral by the provisions of section 363(c)(2).  Section 363(a) defines cash collateral broadly, basically as any asset

7

"in which the estate and an entity other than the estate have an interest" and would

include proceeds from property of the estate which are "subject to a security interest as

provided in section 552(b) of this title, whether existing before or after the

commencement of a case under this title."  Thus, cash collateral is an asset of the estate in

which another entity has an interest, and may include "rents" or "profits of property

subject to a security interest" if such an interest is provided for by section 552(b).

Section 552(b)(1) provides:

Except as provided in sections 363, 506(c), 522, 544, 545, 547, and 548 of this title . .
., if the debtor and an entity entered into a security agreement before the
commencement of the case and if the security interest created by such security
agreement extends to property of the debtor acquired before the commencement of
the case and to proceeds, products, offspring, or profits of such property, then such
security interest extends to such proceeds, products, offspring, or profits acquired by
the estate after the commencement of the case to the extent provided by such security
agreement and by applicable nonbankruptcy law, except to any extent that the court,
after notice and a hearing and based on the equities of the case, orders otherwise.

Thus, in order for a creditor with a pre-petition interest in rental proceeds to retain

that interest post-petition as cash collateral the facts must indicate, among other

things, that a pre-petition security agreement extends to the property and the rents, the

agreement must contemplate extension of the creditor's interest post-petition, state

law must recognize the validity of the post-petition security interest and the equities

of the case must not compel another result.  See id.; In re May, 169 B.R. 462, 465

(Bankr. S.D. Ga. 1994).

State law controls property rights as between the creditor and the debtor.  See

SLC, Ltd. V v. Bradford Group West, Inc., 152 B.R. 755, 760 (Bankr. D. Utah 1993)

8

(citing <u>Butner v. United States</u>, 440 U.S. 48 (1979)).  In this case, it appears that both

First Community and Clark obtained a security interest in the Building before the

Debtor filed its Petition and that each security interest purported to extend to the pre-

and post-petition Rental Proceeds.  Inasmuch as First Community is in first position,

however, this Motion will focus primarily on the Assignment to First Community.

Under the foregoing analysis, the critical question is the extent to which Utah

law provides for the post-petition extension of an assignee's security interest in the

Rental Proceeds.  Before proceeding to that analysis, however, it is appropriate to

discuss First Community's contention that the foregoing analysis does not even apply

because First Community purportedly "foreclosed" its interest in the Rental Proceeds

pre-petition, leaving the Debtor with no interest in the Rental Proceeds.  This

contention, however, would only be valid if the Assignment is interpreted to have

"absolutely" conveyed all interest in the Rental Proceeds to First Community prior to

the Petition.  As shown below, the Assignment did not affect an absolute transfer,

meaning that the Debtor retains an interest in the Rental Proceeds.

### A. THE ASSIGNMENT IS NOT ABSOLUTE AND THE DEBTOR RETAINS AN INTEREST IN THE RENTAL PROCEEDS.

Some courts have found that post-petition rents are not property of the Debtor's

estate, and therefore not cash collateral, by interpreting the assignment of rents as being

"absolute."  In essence, these courts find that the assignment, by its terms, divests the

debtor of any interest in the rent proceeds.  Such is not the case here.

9

A bankruptcy court is more likely to find that an assignment is absolute if it is interpreting the law of a state which follows the "title theory" of mortgages.  See In re Donato, 170 B.R. 247, 252 (Bankr. N.J. 1994).  In a title-theory state, a mortgage of real property transfers title to the mortgagee.  In a lien-theory state, title remains in the mortgagor, and the mortgagee takes only a lien.  See O'Neal Steel, Inc. v. EB Inc., 186 F.3d 638, 644 n.10 (5th Cir. 1999); Commerce Bank v. Mountain View Village, 5 F.3d 34, 37-38 (3d Cir. 1993).  Utah is a lien-theory state.  SLC, Ltd., 152 B.R. at 760.

Courts operate under the strong presumption that an assignment is not absolute because the assignor, by definition, retains legal title.  O'Neal Steel, Inc., 186 F.3d at 643 (classifying as absolute assignment requires "especially clear evidence that the parties intended to create such an assignment"); In re Century Investment Fund VIII, L.P, 937 F.2d 371 (7th Cir. 1991) (recognizing normal presumption but finding that assignment could only be interpreted as being absolute); In re Donato, 170 B.R. 247 (Bankr. N.J. 1994) ("Absent unequivocal and unambiguous language reflecting that the parties intended to transfer title to the rents, such assignments will be construed as granting the assignee merely a security interest.").

The Assignment to First Community is in the nature of a security interest and not an absolute assignment.  The Assignment does not contain the word "absolute."  This language was considered necessary to finding an absolute assignment in In re JP Realty II, Inc., 2003 Bankr. LEXIS 1719, at *11 (Bankr. M.D. Tenn. June 5, 2003).  The Assignment repeatedly specifies that it is intended as security for indebtedness: "Grantor

10

hereby assigns, grants a continuing security interest in . . .; this Assignment secures all

obligations . . .; this Assignment secures all future advances . . .; THIS ASSIGNMENT

IS GIVEN TO SECURE . . . ."

Although the Assignment conveys to Lender "all of Grantor's right, title, and

interest in and to the Rents," the overall effect of the Assignment is to create a security

interest in the Rental Proceeds.  The court in In re Guardian Realty Group, L.L.C., 205

B.R. 1, 4 (Bankr. D.D.C. 1997) faced similar language and concluded that "read in the

context of the entire document, it is obvious that the language was intended for security

purposes only."  See In re Donato, 170 B.R. at 255.  Such is the case here; when all

relevant provisions are read together, it is clear that the Rental Proceeds were intended as

security for the indebtedness.  It was not intended that all title and right pass to First

Community.

Perhaps the most important factor in concluding that the Assignment is not

absolute is the fact that Debtor was entitled to receive the Rental Proceeds upon payment

of its obligation in full.  The court in Cavros v. Fleet Nat'l Bank, 262 B.R. 206, 210

(Bankr. D. Conn. 2001) found this factor paramount: "Significantly, [the assignee's] right

to collect the rents pursuant to the Agreement terminates upon discharge of the

mortgage."

Indeed, this factor is perhaps most persuasive because unless the assignee retains

the right to the rent proceeds into perpetuity, its interest is only that of security for

indebtedness.  Properly speaking, if an assignment were truly absolute, it would transfer

11

all risk of non-collection of rents to the assignee, and the assignor would not be entitled

to any excess rents after the mortgage debt was paid in full.  See In re Guardian Realty,

205 B.R. at 5; see also In re Hrapchak, 2008 Bankr. LEXIS 1084, at *9-16 (Bankr. N.D.

W. Va. Apr. 16, 2008) (listing and discussing factors by which the substance of an

"absolute assignment" must be analyzed).

　　　Such is clearly not the case with the Assignment to First Community.  Not only

does the Assignment not even claim to be absolute and states that it is made for the

purpose of securing the underlying debt, it also allows the Debtor to retain possession of

any rents once the underlying obligation is discharged.  This Assignment cannot be

deemed "absolute."  As a result, the Debtor retained an interest in the rental proceeds,

even after the Assignment was perfected by First Community.

　　**B.  EVEN IF AN ASSIGNMENT IS "ABSOLUTE" ON ITS FACE, THE
　　DEBTOR RETAINED AN INTEREST IN THE RENTAL PROCEEDS
　　SUFFICIENT MAKE THE PROCEEDS CASH COLLATERAL.**

　　　Even if an assignment of rents is considered absolute on its face, courts in both

title-theory and lien-theory jurisdictions have recognized that the debtor retains a

sufficient interest in the rents to qualify the rents as cash collateral which the Debtor may

access.  Cavros, 262 B.R. 206 (title-theory state); In re Mocco, 176 B.R. 335; In re May,

169 B.R. 462.  Even though an assignment may be "absolute" on its face, the Debtor still

retains an equitable interest which brought the rents within the scope of the cash

collateral provisions.

12

The reasoning behind this conclusion is that because a debtor retains various significant rights, including a right to possession, a right to accounting, and a right of redemption, it has sufficient interest in the rents such that they qualify as cash collateral:

> Common sense suggests that if an absolute conveyance by security deed does not convey an absolute estate as to title, an absolute conveyance by assignment of rents arising from the same property does not convey an absolute estate in the rents. In both situations, the grantor retains a right of possession and of redemption which comprise a part of the grantor's equitable estate.

In re May, 169 B.R. at 470; "The grantor retains an equitable interest in the rents, and whether the interest is depicted as a 'reversionary interest', a 'right of redemption' or the like, it is an interest which becomes property of the bankruptcy estate." Id. at 471. The discussion of the court in In re Mocco followed similar reasoning.

The idea is that unless the assignor truly gives up all present and future interest in the rental proceeds, the assignor/debtor still has an interest cognizable under 11 U.S.C. § 541(a).  Consequently, where another entity also has an interest in the rental proceeds, those proceeds fall within the statutory definition of cash collateral.  See In re Mocco, 176 B.R. at 345.

Such is the case with the Assignments to First Community (and to Clark). The Debtor had a possessory, accounting, and redemption interest in the Rental Proceeds at the commencement of the bankruptcy case.  It remained in possession of the Property.  It had the right to have any rents collected by the assignees applied towards its indebtedness.  It had the right to redeem the Property of its indebtedness

13

and thereby resume collection of the rents.  That interest brings the Rental Proceeds

within the scope of the cash collateral provisions of the code.

### C.  UTAH CODE ANN. SECTION 57-26-101 ET SEQ. REINFORCES THE CONCLUSION THAT THE ASSIGNMENT IS NOT ABSOLUTE.

In accord with the trend evidenced by the aforementioned case law, the Uniform

Assignment of Rents Act, adopted by Utah Code Ann. § 57-26-101 et seq., makes

explicit that all assignments, no matter how phrased, are security interests and not

"absolute" in the sense that the borrower may lose its interest in the rents.

Section 57-26-104(2) states that the particular phrasing of an assignment is

irrelevant—it always creates a security interest:

> An assignment of rents creates a presently effective security interest in all accrued
> and unaccrued rents arising from the real property described in the document
> creating the assignment, regardless of whether the document is in the form of an
> absolute assignment, an absolute assignment conditioned upon default, an
> assignment as additional security, or any other form.

The commentary of the Uniform Assignment of Rents Act makes clear that the drafters of

the Uniform Act intended that "absolute" assignments be done away with:

> Often, an assignment of leases and rents will state that the assignor is making an
> "absolute" transfer of rents, even though the context of the transaction (and often
> the terms of the assignment itself) indicate that the assignor is making the
> assignment only as security for repayment of the mortgage obligation.  Mortgage
> law has long established that instruments purporting to make an absolute
> conveyance of title nevertheless constitute equitable mortgages if the surrounding
> circumstances demonstrate that the parties are using title to secure payment of a
> debt.  Consistent with this long-established principle, the Act establishes that an
> assignment of rents executed in conjunction with and to secure payment of a
> mortgage debt creates only a security interest in rents, even if the assignment
> purports to constitute an absolute transfer of the rents.

14

See Prefatory Note to the Uniform Assignment of Rents Act, available at

http://www.law.upenn.edu/bll/archives/ulc/maripp/2005Final.html. (emphasis added).

The Prefatory Note makes clear that the drafters of the Uniform Act rejected the view

that an "absolute" assignment operates to take rental proceeds out of the Debtor's estate,

and in doing so, the drafters sided with the Restatement and most commentators.

> If a mortgagee had already completed a foreclosure sale before
> bankruptcy, the real property belongs to the foreclosure purchaser and thus
> unaccrued rents would not constitute property of the bankruptcy estate.
> But if no foreclosure has yet occurred — and thus equitable ownership of
> the real property remains in the debtor — unaccrued post-petition rents
> would seem to fit squarely within the broad concept "property of the
> estate" defined in § 541(a).

Id. at 21.  Utah's adoption of the Uniform Act leaves no room for First Community to

argue that its Assignment is absolute.  Therefore, the Debtor retained a sufficient interest

in the Rental Proceeds to constitute cash collateral.

**II.    ALL RENTS NOT COLLECTED BY FIRST COMMUNITY OR
WHICH ACCRUED POST-PETITION ARE CASH COLLATERAL
SUBJECT TO USE BY THE DEBTOR'S ESTATE.**

Inasmuch as the Assignment in this case is not "absolute," cash collateral status is

the greatest interest in the Rental Proceeds which First Community can be deemed to

hold.  It appears that First Community holds such an interest, inasmuch as it had a

perfected interest in the Rental Proceeds at the commencement of the Debtor's

bankruptcy case.  Under SLC Ltd., recordation of a security interest in rents is sufficient

to perfect that interest.  152 B.R. at 761.  Having perfected its interest in the Rental

Proceeds, this Court should likely conclude that Utah state law would recognize that First

Community has an interest in the ongoing Rental Proceeds.

This Court should not, however, conclude that First Community "foreclosed"

upon its interest in the Rental Proceeds by notifying tenants to pay their rents directly to

First Community.  The only way that such action could be deemed to "foreclose" upon

the Rental Proceeds is if the Debtor retained no interest in the Rental Proceeds after the

tenants had received such notice.  This is not the case, whether by reference to the

language of the Assignment to First Community, the case law applicable to lien-theory

states such as Utah, or the statutory language of the Uniform Assignment of Rents Act

adopted by Utah.  First Community did not "foreclose" on its interest in the Rental

Proceeds, meaning that the Debtor retained an interest in the Rental Proceeds which

brings those proceeds within the definition of cash collateral.

Although Clark also perfected its interest in the Rental Proceeds, its interest is

second to that of First Community and therefore not relevant to the determination of

whether the Debtor held an interest in the Rental Proceeds on the date of the Petition.

Even if the Assignment to First Community did not exist, the Rental Proceeds would still

be cash collateral in relation to Clark, for although the Assignment to Clark is "absolute"

on its face, it functions as additional security for the indebtedness.  As such, Clark did not

"foreclose" on the Rental Proceeds by demanding payment from tenants.  The Debtor, by

law and by sound reasoning, retains an ongoing interest in the Rental Proceeds.  As

16

noted, Clark's presence in this adversarial case is not necessary because whatever the

nature of its interest in the Rental Proceeds, it is subordinate to that of First Community.

## CONCLUSION

The Debtor is entitled to summary judgment, declaring that the Rental Proceeds

are property of the Debtor's estate, inasmuch as the Debtor held an interest in the Rental

Proceeds on the date the Petition was filed.  Debtor is therefore entitled to use the Rental

Proceeds in its plan of reorganization if in accordance with the provisions and procedures

of 11 U.S.C. § 363.

**DATED and SIGNED this 31st day of July 2009.**

**LEBARON & JENSEN, P.C.**


**/s/ Tyler J. Jensen_____**
**Tyler J. Jensen**
**Attorney for Plaintiff**

## <u>CERTIFICATE OF MAILING</u>

I hereby certify that I mailed a true and correct copy of the foregoing document,

postage prepaid, to:

Matthew M. Boley
Parsons Kinghorn Harris, PC
111 E. Broadway, 11th Floor
Salt Lake City, Utah 84111


Daniel J. Torkelson
Cohne, Rappaport, & Segal
257 E. 200 S. Ste 700
Sale Lake City, Utah 84111


on this 31st day of July 2009


   /s/ Linda Palmer      
Secretary